Good morning, Your Honors. May it please the Court, Holly Sullivan on behalf of Appellant Lathom. Officers arrested Mr. Lathom within minutes of stopping his vehicle without probable cause to do so and proceeded to then search the car including the glove compartment, glove box of that car and the content should be suppressed because there was not probable cause to do so. And at the time they did that? Yes. So your main concern is with what was whether there was probable cause at this point about 15 minutes in after the stop? Correct. I believe it was about 16 minutes at that point. And no matter whether it's two minutes in, which is when I think the Terry stop converts to an arrest because of the limited freedom that he had at that point, or whether it's when the officers actually order him to be arrested, which is about 16 minutes at that point, either way there was no probable cause at that point. The stop went from a Terry stop, which they had reasons to stop him, there was a traffic violation, he admitted to a traffic violation of changing lanes without signaling before doing so, so there was reason to stop him. They stop him, they ask him for license and registration, he provides that, they go and run a check to check on whether or not he has a valid license, he provides that, he's compliant, he does nothing to indicate to them at that point that there are any issues. And they're limited in the length of the stop, it's a limited purpose, and they are allowed to have it no longer than necessary to effectuate the purpose of the stop. And they go beyond that. The officer that performs the stop is told to stall, and they're stalling because they're waiting. That's why I don't understand where your emphasis is, because this is now shifting over to a Terry argument. So where are we? It begins with a Terry stop, and we don't actually take issue with a stop occurring. I understand that. It's that the stop was extenuated, and then he's arrested based on what occurs during that 16-minute period of time, I guess from 2 minutes to 16 minutes. Are you concerned both with the fact that they dragged it after 16 minutes? Yes. And you're also arguing that at the end of the 16 minutes, they still didn't have a problem. Correct. At the end of it, it goes beyond a Terry stop, so the extension of the stop to the extended stop. And the reasons for that is because at that point, Mr. Carr is asked to leave his cell phone and can't leave. He's asked a series of questions that have nothing to do whatsoever with the reason for the stop. He's asked about tattoos. He's asked whether or not he's on probation or parole. And he, for good reason, begins to question. Meanwhile, and this is really my question, meanwhile, they are investigating the crime they think he committed by surveying the other people involved in it. Now, is that a legitimate reason to have a Terry stop, i.e., to investigate? Is there any case law in this? I mean, when they say you can do it to investigate, does that, can the investigation be somewhere else of some other people? Is there any case law in that? I believe the Chamberlain case addresses that particular issue. And in Chamberlain, the officer told Chamberlain to wait in, and it was a, whether or not there was a check, a false check that was being given to a furniture store, I believe. So the officer stopped Chamberlain, began to question him, believed that he was not telling, not being truthful with him at that point, and asked him to wait in the patrol car for 20 minutes while he then went to find the other person who was with Chamberlain and to ask him questions. And it was a 20-minute detention at that time to find out what's going on. I believe that that is similar to what's happening in this case. So because the officers knew that there was this seemingly innocent transaction in a public parking lot where Latham meets Dong, gets out of his car, takes two bags and gives them to Dong, and returns to Latham's car with nothing. There's no indication he has any package. There's no indication that he is in any way concealing anything on his person when he's returning to his own car, to Latham's car. The agents were ---- But if they had stopped him at that, if they, when they stopped him, had asked him questions about that, said, well, you know, we saw you doing this, why were you doing that? Because they've done that. Putting Miranda issues aside, they are allowed to ask questions that are related to the stop. I don't believe that they would only be able to ask him questions about a lane change. I think they would be able to ask him questions that are related to the purpose of the stop, even if that is a different ---- So they didn't do it that way, but what they did do was try to drag this out while ---- I mean, they were investigating the crime. They had reasonable, a crime of which they had reasonable suspicion, if not probable cause, to think he was involved. They just weren't investigating it with him at the time. They were, they were pursuing probable cause for Dong and ---- And him, I mean, and that made it, it at least made it more probable at the end of the first 16 minutes than before, because there was at least more evidence that there was, in fact, drugs being sold here. It certainly would have been a factor to consider, yes, in a probable cause determination and considering the circumstances of probable cause. So my question is, is that a legitimate use of Terry stopped 15, 16 minutes under our case law? Maybe it shouldn't be, but it's true. It's not the outside limit of a Terry stop, right? Correct. There's no set ---- 15 minutes and more than that. So the question is whether, and they were investigating the crime. They just weren't investigating him by the stop. So what's the law on that is what I'm asking you. That's where I believe the Chamberlain case directs that it is, they're not allowed to stop him and detain him for 20 minutes in order to find out what's going on. So whether that's with DONG or if they're waiting on Petway, no matter what they're waiting on to transpire, they're not allowed to detain him for that purpose. It goes beyond just ---- But if they had waited 15 minutes because they're waiting for this other drug deal to go down at the macaroni grill or whatever, and had asked him questions during that 15 minutes that were pertinent, not about tattoos, but about exchanging two white bags earlier in the parking lot, would that have been permissible? I think that's Judge Berzon's question. It's certainly mine if it's not hers. My concern with that is they would have had to have probable cause at that point. At some point, that limited ---- They would have had to have probable cause to ask those questions? Well, at some point, that detention, so that limited ---- during this limited intrusion and restriction on his freedom of speech. You're calling that a Terry stop, and you're not objecting to the Terry stop? We're not objecting to the stop occurring. We're objecting to the extension of the stop. Right. And so during those 15 minutes, you're saying that it's ---- that's too long to hold him because they were investigating somewhere else? Yes. They weren't asking him questions. So my question is, if they'd kept him for 15 or 16 minutes, everything the same, they kept him for 15 or 16 minutes except that during that time, if they had asked questions about their earlier observations, about him getting out of the car and giving two white bags to Dong, thank you, would that have been permissible? It ---- unfortunately, my answer, I think, is it depends. If the ---- they're certainly permitted to ask him questions and to ask him questions that further their investigation during that time and that are related to the purpose for the stop, the real purpose for the stop. However, in going through asking him questions, at some point that it ---- unless the answers to those questions were facts that led the officers to have probable cause that he was involved, for instance, if they asked him ---- So the stop is the end of your sentence, right? Just to complete your thought? That's your point? Yes. Yes. So it sounds like to me like it's sort of like you want to have it both ways. They need to be diligently pursuing their investigation, right? Yes. Okay. So it's not only that there would have been permitted to ask those questions. I think your argument is they were required to be doing that and the fact that they were investigating somewhere else isn't enough or am I missing your argument? I agree with that. I wouldn't say that they're required to be asking him questions. Well, they're required to investigate. If it took 12 minutes to ask him questions specifically related to the traffic stop, I think that they could have done that. So I'm not saying that they were required to ask him questions concerning drug activity. Well, but you do take the position that they were required to be diligently pursuing their investigation. Yes. Or else they had to stop. I'm sorry? Or else they had to stop and let him go, right? It was one or the other. Yes. The questions have to be reasonably related to the purpose to effectuate the stop. So I'm not understanding your hesitation in answering my question when I said during that 15 or 16 minutes, if they had been asking questions about this earlier observation, would they have been okay and you don't want to answer that question by saying yes. So what am I missing? Well, I guess my concern is at what point, how long can that occur? So if they are asking him questions and his answers to those questions don't implicate him in any fashion in criminal activity, in the sales with Don Petway, can they ask him questions about it for three hours? Can they keep him on the side of the road? I see your point. So that's my concern. It's just the duration. Yes. My concern is the duration. I would like to reserve any additional time. Thank you. Thank you. May I please the Court, Nancy Spiegel for plaintiff-appellee, United States. How long could they have kept him there, waiting to hear that the other drug deal had gone down? On the facts of this case? Yeah. I think that they certainly had the right to keep them for the 16 minutes. Could they have arrested him? It would have to be a Terry stop. Could they have arrested him? Sure. They could have arrested him right away. I think there was probable cause right away. We never argued that in your brief, actually. We didn't because that wasn't the basis for the district court's ruling, and the brief basically was supporting the district court's ruling. But of course, this court can affirm on any ground. But I think the reasonable suspicion did justify the entire length of the investigative stop, and that the reasonable suspicion only increased as the time went by. But why? They were asking questions about tattoos and stuff that really didn't have to do with the drug deal. The likelihood of nabbing him did because there was a drug deal that was going to go down at the macaroni grill. Do I have the name right? Is it macaroni grill? Yes, it was the macaroni grill. Thank you. But the questioning didn't seem to be leading anywhere, did it? Well, I would take issue with that. I think, first of all, because they had never seen this defendant before in the course of their investigation, I think it was legitimately within the realm of reasonable suspicion to ask him questions to ascertain who he was and did he have a record? They didn't. They did not ask him those questions. Well, they did. They asked about his address. They asked if he was there. Yes, but they didn't ask him anything to do with the crime that they suspected him. It was all a ruse. Ruse. Those questions don't strike me as diligently pursuing. Can you tell me why I'm wrong? Well, I think it – I would call this court's attention to the Sharp case, and in that case, that was a 20-minute stop, and there were two vehicles involved. One was a car and one was a truck, and the officer who had stopped the truck, which it turned out was loaded with bales of marijuana, that officer held the defendant, Savage, there for 20 minutes waiting for another officer to complete his investigation at the car before he came. There were no questions asked about the crime, and the Supreme Court found that that was fine because the diligent investigation involves the entire crime. So does that mean that the diligent investigation was going on somewhere else? Yes, and in fact, especially in this case where unlike in Sharp and unlike even in Mayo where this court upheld a 40-minute detention in a drug case, this crime was still occurring. It wasn't like the crime had finished and they were conducting an investigation. Your position is they could have arrested him from the outset and failing that. If this is a Terry stop, it sounds like your position is the diligent investigation was going on somewhere else. I don't hear you arguing that the questioning that went on during this 15 or 16 minutes is what you're relying on for diligent investigation or diligent pursuit. Well, it's not necessarily the questioning, but there were facts that occurred during the stop that increased their suspicion of life. That's what I need. Can you tell me what's that? So there was his nervousness and his evasiveness in answering the questions. He didn't want to give his phone number. At nearly six minutes into the stop, he started arguing about whether or not he had in fact changed lanes. He was sort of questioning everything that Officer Pate was asking him. And importantly, Officer Pate noticed that as soon as he stopped the car, Latham quickly shut the glove compartment, which added to the reasonable suspicion that he had just sold drugs in exchange for money that could logically have been in the glove compartment. So I think those facts did add to the reasonable suspicion of this particular defendant at that particular time. He saw them reach over and close the glove compartment right as he was pulling them over, right? Right. OK. So what exactly happened in Sharp in terms of the investigation that was going on in the meantime? There were two cars that were a half mile apart. They stopped. They were both stopped. Sharp was in one of the cars? Sharp was in the car and Savage was in the truck that had the marijuana. And the FBI agent was questioning, I think it was FBI or DEA, I'm sorry, it probably was DEA, was questioning Sharp in the car because the car had pulled over first when the officer signaled. The truck had kept going. And so another officer pulled over the truck a little ways down the road. And the officer who pulled over the truck that Savage was driving felt that he wasn't in a conduct a further drug trafficking investigation without waiting for the DEA agent to show up. And that took 20 minutes. What happened, I'm sorry. Excuse me for interrupting. That was a Terry stop then? Yes. And the court found that that was a Terry stop, that there's no time limit, that I think the important thing that the court said there was if there's a swiftly developing situation, which of course we have here because our crime wasn't complete. And the officers are diligent, then it was okay to hold him pending the arrival of the DEA agent. Here, again, we have the exigency of a drug deal that's been occurring for approximately a day and a half. And the officer at the scene with Latham, Officer Pate, is getting periodic updates from going to have him in custody in a few minutes, hold on to Latham. We don't understandably want him driving around alerting people that we're continuing our investigation. And so I think based on those facts... That's a different question. Is that a legitimate reason to keep him? I'm sorry. Is that a legitimate reason to keep him as opposed to investigating a crime of which he was guilty? Well, I think they were doing both. I think they were investigating the crime of which he was guilty. Let's say they didn't have probable cause to arrest him and it was just based on reasonable suspicion that he had delivered drugs to Dong in the parking lot. Well, I think it was reasonable to wait these few minutes to be sure that Dong wasn't, I don't know, going somewhere else. That they wanted to make sure that this was a continuation of the drug deal. That Dong did return to his residence, that he did have the bags in his hand when he went into the residence. A few minutes later, he and Petway left and Petway drove to the macaroni grill with a box in his car. Now, do you want to briefly tell us why you think there was probable cause at the conclusion of the 16 minutes at the point they formally arrested him? Yes, because of all of the preceding facts that I mentioned. And in addition, at the moment when Petway opened the trunk of his car at the macaroni grill and the agent saw that there was the same box he had left Dong's house with in the trunk of the car, there was probable cause to believe. But they hadn't seen the defendant here with that box. With the box. Right? They'd seen him with a bag, but they hadn't seen him with that particular box. Right. So what did that add to the situation? Because I think the context of the events, that there was no, there was nothing intervening in what happened with Dong from the moment he left Latham. He went directly to his house, he brought the bags in his house. A couple minutes later, I mean, knowing that the... What he walks out with is not the bags. It's a box. But bag as such is never seen again, is that right? After he, after Dong enters his residence, correct. It's a box now. But I think based on the timing of the events, knowing that the undercover agents are waiting at the macaroni grill for the delivery of the pills and this has been going on for a day and a half, I think that they did have... They didn't wait. I mean, they didn't wait until they actually knew that there was marijuana or whatever the drug was in the box. But then we're in a catch-22 because that was 15 minutes later that they actually opened the box and then we would have had Latham stalled even longer and that would have... I know, but that doesn't make it into probable cause. It's just they may have had a problem. All right. Okay. And based on the fact that he was arrested, based on probable cause, the officer certainly had a right to search his vehicle under the automobile exception. If there's no further questions, the government will submit. Thank you, guys. I just want to very briefly address a few points. One is Mr. Latham's conduct, nervousness conduct that happened from the time of the stop until the 16 minutes transpired. It's certainly reasonable or a reasonable person may start to question why when you're pulled over for switching lanes without signaling, you are asked to step out of the car, to leave your cell phone in the car, and are being asked questions about tattoos that you may or may not have. So I don't believe that that is a factor that should give any weight here. Also, as far as when Mr. Latham was pulled over, the testimony was that he had quickly shut, lickety-split, shut the glove compartment. It was not that he had put something inside the glove compartment. There was no testimony of that nature. And again, as you can logically conclude, that he took the registration from the compartment. When you say the Chamberlain case, do you mean the Collins case? No. I mean Chamberlain. Collins also, but the Chamberlain case, it's 644 F. 2nd, 1262. Okay. Thank you. And that case, I do believe, is pertinent because he was being held for 20 minutes while the officer conducted further investigation into it was either Richard or Robert, another person that he believed was with Chamberlain at the time, also participating in check fraud. Do you think, or, I mean, you also argued that there wasn't probable cause at the end of this. Yes. Do you want to tell us why, briefly? Yes. The government argues a few things in that they're arguing that this transpired over a day and a half time. There are numerous factors that, you know, the government is rely on factors in the totality in order to determine probable cause, but they're not able to throw out factors which could cut at that. The day before, on the 25th, there is this long meeting with Petway at the Macaroni Grill. There's two hours that he waits at the Macaroni Grill with agents. There are phone calls back and forth. They see Don leave his home and drive to an hour away or somewhere further in the Los Angeles County area, where they believe that he is going to get the extra 9,000 pills that they're looking for, returns back to his home. And there are numerous statements from Petway to agents that night, on the night of the 25th, that he has secured the drugs and has the drugs. Well, he didn't say has. He said secured. And he could have secured. I mean, secured means it doesn't necessarily mean they're in his possession. Correct. And I'm not saying that it is definite, but he did say that he had them at that time. No, he didn't say that. He said he had secured them. Correct. Correct. Again, that same morning, before the meeting in the parking lot at 11 o'clock, he makes the same claims again to agents that he has the drugs. I would also note that why does that matter? Because all of these, the government's position is that the exchange between Latham and Dong at noon is because Latham is bringing the 9,000 pills, or at least a portion of those pills, to Dong, who then returns and then gives them to Petway, who brings them to the agents. But if Petway already has the drugs at the time, prior to the interaction in the parking lot with Latham and Dong, there's no reason to believe that that's a continuation of the crime. He told him that and they didn't believe him. At the time, they did believe him. They said that they... The night before? Isn't that why they made the... Isn't that why they rearranged to have it be the next morning? It's unclear. There are different times where agents testify that they didn't know because he had stalled, if he really had them or if he didn't have them, and that there's drug dealer time where people say that they're ready and they're not really ready. Isn't that why the agents said they set it up for the next day? Yes, but the agents also said that they were the ones who chose to set it up for the next day, that he said he was ready that day, or that on the 25th. Okay. And then lastly, so at the point that they choose to give the order to arrest at 1246, at that point, they tell the officer to go ahead and arrest Latham. And at that point, they had not even opened the box. It was 15, 16 minutes later that they had chose to open the box that contained drugs. So the only additional factors is that Dong had returned from the parking lot to his house and then had later left with Patway with a different container. And so I don't believe that at that point would give rise to probable cause, even if those are the factors that the government is relying on. Thank you. Any rebuttal? Your Honor, just one thing I'd like to point out that regarding the timeline with the 9,000 pills, the agents did arrange for a meeting the next day at 11 o'clock, and Patway went to the macaroni grill, met with the agents at 11 o'clock, and still did not have the pills in his possession. So at the time Latham was stopped, the agents knew that Patway hadn't had the pills earlier in the day, that he was still waiting for them. So he met with the agents. He left and went directly to Dong's house. Dong went and met with Latham and went back to his house. So that was the chronology of that morning. Thank you. All right, thank you. This matter is submitted as is the Dong matter, and we'll recess until 9 a.m. tomorrow morning. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Oh, okay. Okay, that's fine. Okay, thank you.  Bye-bye.
judges: Pregerson, Berzon, Christen